UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KYRA BLOWER,

    Plaintiff(s),

 v.

UNIVERSITY OF WASHINGTON,

    Defendant(s).

NO. C10-1506MJP

ORDER ON MOTION TO SEAL AND MOTION FOR TEMPORARY RESTRAINING ORDER

The above-entitled Court, having received and reviewed

1. Plaintiff's Motion to Seal (Dkt. No. 2) and Defendant's Response (Dkt. No. 13)

2. Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 3) and Defendant's Response (Dkt. No. 13)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that the motion for temporary restraining order is DENIED.

IT IS FURTHER ORDERED that the motion to seal the file is GRANTED IN PART and DENIED IN PART; Plaintiff is permitted to seal, using the procedure outlined in CR 5(g) of the Local Rules, her privileged medical and therapeutic documents and declarations by her care providers containing privileged information. Her motion that the entire file be sealed is DENIED as overbroad.

**Discussion**

Plaintiff is enrolled in the Ph.D. program in marketing offered by the Foster School at Defendant University of Washington ("UW"). Plaintiff also suffers from a 10-year history of [*redacted for reasons of confidentiality*]. Following receipt of a "B" on a mid-term exam in a psychology class, Plaintiff altered the exam paper and resubmitted it in an attempt to receive a higher

ORDER ON MOTION FOR TRO - 1

1  grade. The deception was detected and the matter reported to the Director of Graduate Training in
2  the Psychology Department.

3      Disciplinary proceedings were commenced against Plaintiff. An informal student disciplinary
4  hearing before a panel of three Foster School professors was held on Feb. 8, 2010 at which Plaintiff
5  (1) denied altering the exam and (2) did not assert a disability or request any accommodations. The
6  panel found a violation of the Student Conduct Code and imposed a sanction of dismissal from the
7  program.

8      Plaintiff appealed that decision to the University Faculty Appeal Board ("Board"); a *de novo*
9  hearing took place on May 19, 2010 at which Plaintiff again denied altering the exam and again
10 failed to request an accommodation.[1] (Nor did she request consideration of any underlying mental or
11 physical health issues as grounds for converting her discipline case to one for medical treatment, as
12 she was entitled to do under the University regulations.[2]) The Board found her guilty of violating the
13 Conduct Code but revised the sanction to a one-year suspension (followed by probation for the
14 remainder of her Ph.D. program) because she had no previous violations.

15     Plaintiff appealed the Board's decision to the University president, admitting for the first time
16 that she had doctored the exam. She submitted additional declarations from her health care team
17 concerning her medical/psychological condition. On June 21, the president upheld the Board's
18 decision, refusing to consider the additional submissions. Blower Decl., Ex. 8. Plaintiff's request for
19 reconsideration of that decision was denied on June 29. Ten weeks later, Plaintiff filed a complaint

---

[1] Plaintiff alleges that she attempted to admit into evidence the declaration of a treating physician (Dr. Carle) diagnosing her as [*redacted for reasons of confidentiality*] and suggesting that it was a matter of "life and death" that she continue to be treated by the staff at UW Hospital, and the Board refused to admit the evidence. The findings of the Board (Blower Decl., Ex. 4) reflect that exhibits from Plaintiff's counsel were admitted, but do not specify the nature of those exhibits and whether any proferred exhibits were refused. The Board findings make no mention of Plaintiff's medical condition. The Court notes that the thrust of Dr. Carle's declaration is aimed at mitigating the sanction against Plaintiff, not seeking an accommodation for any disability she may have possessed.

[2] In fact, there is testimony from an Assistant Attorney General who reviewed the DVD of the Board hearing that Plaintiff's counsel was asked if she was seeking an accommodation and replied no, they were seeking "exoneration." Def Response, Huang Decl. ¶ 7; Second Huang Declaration, DVD Exh. of Board hearing.

26 **ORDER ON MOTION FOR TRO - 2**

against the University (alleging discrimination on the basis of her disability) accompanied by this request for a temporary restraining order ("TRO"), moving for reinstatement in the program on a probationary basis pending the ultimate resolution of this litigation.  Classes are scheduled to begin on Wednesday, September 29.

Motion for Temporary Restraining Order

The Court examines Plaintiff's request for TRO under the four traditional factors enunciated in Toyo Tire Holdings v. Continental Tire, 609 F.3d975, 982 (9th Cir. 2010), citing Winter v. Nat'l Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008).

1.   *Likelihood of success on the merits*

   a.   *Failure to accommodate*

Plaintiff claims discrimination on the basis of her disability, and failure to accommodate her disability in contravention of federal law.  Complaint, Dkt. No. 1.  Even assuming *arguendo* that Plaintiff can establish that she has a cognizable disability (which Defendant does for purposes of this motion only), the weight of the authority places the burden on her to request an accommodation before any duty is triggered.  Tips v. Regents of Texas Tech University, 921 F.Supp. 1515, 1518 (N.D. Tex., 1996; employment case); Wynne v. Tufts University School of Medicine, 976 F.2d 791, 795 (1st Cir. 1992; academia case).  There is no evidence that Plaintiff requested an accommodation at any point prior to or during the disciplinary proceedings at issue.  Even the medical affidavit from Dr. Carle which she submitted to the Board, while identifying her condition, contains no accommodation request to the University – it is focused on mitigating the sanction against her so that she may continue to receive low-cost treatment as a UW student.  Blower Decl., Ex. 3.

There is also case law suggesting that it is permissible to inquire into what the defendant "reasonably *should have* known" concerning the plaintiff's condition and the need for accommodation.  Plaintiff cites a number of cases for the proposition that there are circumstances where the disabled person may be reluctant to disclose the disability but that it is so obvious as to

ORDER ON MOTION FOR TRO - 3

1  trigger the accommodation requirement independent of the request. *E.g..*, Reed v. Lepage Bakers,

2  Inc., 244 F.3d 254 (1st Cir. 2001) and Enica v. Principi, 544 F.2d 328 (1st Cir. 2008). Defendant,

3  however, presents evidence that it was not obvious, from Plaintiff's physical appearance, that she was

4  suffering from a medical condition that amounted to a disability (Lee Decl. ¶ 5) and further that

5  Plaintiff's exemplary performance in the program up until the cheating incident belies any notion that

6  the University should have known she was laboring under a disability. The evidence is far from

7  unequivocal that the University, based on independent observations of Plaintiff, should have known

8  that Plaintiff was suffering under a disability.

9      UW goes one step further to argue that, even assuming a requirement to accommodate, the

10  University could not be required to "accommodate" dishonesty even if it could be attributed to

11  Plaintiff's disability. Defendant cites a variety of cases, in the contexts of academia and the

12  workplace, where courts have held that the concept of "reasonable accommodation" does not

13  encompass tolerating dishonest, disrespectful or disruptive behavior. See Hall v. Wal-Mart, 373

14  F.Supp.2d 1267 (M.D. Ala. 2005); Bercovitch v. Baldwin School, 133 F.3d 141 (1st Cir. 1998);

15  Childress v. Clement, 5 F.Supp.2d 384 (E.D.Va. 1998).

16      b.   *Disability discrimination claim*

17      Defendant UW presents a legitimate non-discriminatory reason for the complained-of

18  discriminatory action; in the absence of any evidence of pretext (which she has not presented),

19  Plaintiff is unlikely to succeed in establishing that the disciplinary suspension occurred because of

20  her disability. It is one thing to claim (as Plaintiff does) that her dishonesty was an action based in

21  her disability; it does not lead to the conclusion that any adverse consequence arising out of that

22  dishonesty is therefore based on her disability.

23  2.   *Irreparable injury*

24      Plaintiff cites, as elements of irreparable injury arising from her suspension:

25

26  **ORDER ON MOTION FOR TRO - 4**

- *Inability to participate in group therapy through Hall Health at UW*: In fact, UW presents evidence that UW Hall Health Center's services are open to all through the UW Physician Health Care Network.

- *Lack of access to health insurance*: UW will no longer be subsidizing her health insurance, but all Plaintiff says is that "there is a very good chance that she will not be able to pay" on a non-subsidized basis. Motion, p. 18. Case law requires that the injury or threat of injury be both real and immediate, not conjectural or hypothetical. City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983).

- *The structure of the doctoral program helps Plaintiff function better*: As UW points out, the evidence does not support this allegation. Plaintiff describes near-daily cycles of behavior related to her disability while she was a doctoral student.

- *One-year suspension is "tantamount to a dismissal" from the program*: In a motion for a temporary restraining order, which by definition will only be in effect for a short period preceding a more in-depth preliminary injunction hearing, a brief reinstatement will not function to remedy the long-term suspension to which Plaintiff is currently subject.

3.  **Balance of equities**

Plaintiff wants the Court to balance the irreparable harm to her of the one-year suspension to the deference traditionally accorded universities in handling their own academic disciplinary matters. Based on the Court's finding that Plaintiff has not established irreparable injury, and the deference which is accorded to universities in how they choose to deal with academic misconduct, the Court finds that the balance of equities do not tip in Plaintiff's favor at this juncture.

4.  **Public interest**

Plaintiff argues that the public has an interest in not leaving her "unemployed, uninsured and, as a result, at risk of. . . not getting well" (Motion, p. 20), allegations which (with the exception of the

**ORDER ON MOTION FOR TRO - 5**

loss of insurance) the Court finds speculative at best. What impresses the Court more in these circumstances is the public's interest in the maintenance of the integrity of a public institution of learning's academic standards, its process for addressing academic dishonesty, and the public's continued faith in the value represented by the highest degree such an institution can offer.

The Court finds that Plaintiff has failed to present evidence which satisfies any of the elements for granting extraordinary injunctive relief. Plaintiff's motion for a temporary restraining order will be DENIED.

Motion to Seal

This matter concerns allegations of academic dishonesty and disability discrimination at a public educational institution, and the Court believes that the public has a heightened interest and right to know what transpires in cases such as this. Plaintiff's request that the entire record of this case be sealed is overbroad and unwarranted. The Court agrees that Plaintiff has a right to maintain the confidentiality of her privileged medical and therapeutic records, and she is entitled to seal those records in accordance with the procedures established by this district; see CR 5(g) of the Local Rules of the Western District of Washington.

The motion to seal the entire record of this case is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated: September 27, 2010

Marsha J. Pechman
U.S. District Judge

**ORDER ON MOTION FOR TRO - 6**